# IMPERIAL ELEVATOR COMPANY v. W. M. BENNETT.[1]

November 6, 1914.

Nos. 18,524, 18,525—(24, 25).

**Fraudulent transfer by debtor — finding sustained by evidence.**

1. A debtor assigned to a creditor as security for his debt the proceeds of an insurance policy on property that had been destroyed by fire. It is *held* that a finding of the trial court that there was no intent to defraud creditors is sustained by the evidence.

**Same — intent to defraud.**

2. In the absence of an actual intent to defraud creditors, a transfer by a debtor to a creditor of property to pay or secure a valid debt, though it may be a preference, is not deemed fraudulent in law, unless some insolvent or bankrupt law makes it so, and then only in aid of an insolvent or bankruptcy proceeding. The assignment in this case was not fraudulent in law.

**Subrogation — mechanic's lien — proceeds of fire insurance.**

3. Where the owner of real estate insures his interest therein against loss by fire, in the absence of contract obligation the holder of a mechanic's lien on the property has, after a loss by fire, no claim upon the proceeds of the insurance money.

Action in the district court for Hennepin county for $1,423.04, to obtain judgment that the assignment from defendant to Jennie M. Thompson was fraudulent and void, to impress the proceeds of the policy of fire insurance issued by the garnishee company with an equitable lien, and to require it to be turned over to plaintiff to the full extent of its claim. Jennie M. Thompson intervened. The Fidelity-Phenix Fire Insurance Co. of New York was garnisheed. The facts are stated in the opinion. The action was tried before Booth, J., who made findings and ordered judgment in favor of the intervener for the sum of $2,000, and interest, and in favor of plaintiff for the amount demanded. From an order denying its motion for a new trial and a motion to make findings as proposed by plain-

[1] Reported in 149 N. W. 372.

tiff, except in so far as the proposed amendments were adopted by the court, plaintiff appealed. Affirmed.

*Mercer, Swan & Stinchfield,* for appellant.

*Arthur M. Higgins,* for respondents.

BUNN, J.

Defendant Bennett owned lots 4 and 5 in Way's plat of the Townsite of Le Beau, South Dakota, together with a hotel then situated on lot 4. June 15, 1908, he borrowed $1,000 of the intervener, Jennie M. Thompson, and gave her his note for said sum payable in two years with six per cent interest. He and his wife executed and delivered to the intervener a mortgage to secure the note covering lot 4, which mortgage was recorded June 16, 1908. A year later and on July 19, 1909, Bennett, for value received, executed and delivered a second $1,000 note to the intervener, payable in two years, with seven per cent interest. July 30, 1909, Bennett and his wife executed and delivered to the intervener a mortgage to secure this note; this mortgage covered lots 4 and 5, and was recorded October 15, 1909. The mortgage of June, 1908, contained no agreement by the mortgagor to keep the buildings on the premises insured, but there was a clause in the mortgage of July, 1909, by which the mortgagor agreed to keep the premises insured to the extent of $1,000 for the benefit of the mortgagee.

Between June 1 and November 10, 1909, plaintiff sold and delivered to defendant Bennett building material for use by him in the construction of improvements and additions to the hotel. Bennett gave two notes to plaintiff for the material furnished, one for $937 on June 1, 1909, and the other for $589.05 on November 10, 1909. Plaintiff, on November 10, 1909, filed with the proper officer what would correspond to a lien statement under the laws of Minnesota, and admittedly then had under the South Dakota laws a lien on lots 4 and 5 for the amount due and unpaid for the materials furnished.

September 6, 1910, the garnishee insurance company issued to Bennett a policy insuring him against loss or damage by fire to the building then situate on lots 4 and 5 to the extent of $2,000, and against loss or damage to the personal property then contained in

127 M.—17.

the building to the extent of $500. The policy when delivered did not have attached a clause making the loss payable to the intervener. September 8, 1910, the insured property was entirely destroyed by fire. September 13, 1910, the agent for the insurance company, at the request of Bennett, indorsed upon the policy a clause making the loss, if any, payable to the intervener as her interest might appear. The loss of defendant by the fire was, on September 13, adjusted by the company at the full amount of the policy. On the same day Bennett executed and delivered to the intervener a written assignment of his claim against the insurance company.

Plaintiff then commenced this action against the defendant Bennett, asking judgment against him in the sum of $1,423.04, judgment that the assignment to intervener was fraudulent and void, and that the court impress the insurance money with an equitable lien and require it to be turned over to plaintiff to the full extent of his claim. The insurance company was garnished, and disclosed an indebtedness to defendant of $2,500, but subject to the claim thereto of Jennie M. Thompson. This money was paid into court. Mrs. Thompson filed a complaint in intervention, claiming the whole of the insurance money. Plaintiff filed its answer and cross-bill alleging the assignment from Bennett to Mrs. Thompson to be fraudulent and void, and claiming an equitable lien upon the insurance money paramount to any claim of the intervener.

A trial of the issues thus made resulted in a decision that the intervener was entitled to the insurance money to the extent of her claim, $2,000 and interest, and that plaintiff was entitled to the balance. Findings were filed both in the main action and in the garnishment action. Plaintiff moved for amended findings and conclusions, and for a new trial. These motions were denied, and plaintiff appealed from the orders.

The first contention of plaintiff is that the intervener established no right or claim to the fund, and therefore that plaintiff was entitled to be paid in full out of it, because of the garnishment. If the premises are correct, the conclusion would follow. The question therefore is: Had Mrs. Thompson, prior to the garnishment, a valid claim against this insurance money?

Her claim is under the "loss payable" clause indorsed upon the policy, and under the assignment by Bennett to her after the fire. This "loss payable" clause, as before stated, was indorsed upon the policy after the loss occurred. The trial court found as a fact that this was done pursuant to directions given the insurance company by Bennett, given prior to the execution of the policy, to make the loss payable to the intervener. Plaintiff argues that the agent of the company had no authority to change the company's obligations by attaching this clause after the fire. But the finding, which is sustained by the evidence, removes any such question. In any event the intervener had an equitable lien to the insurance money under the clause in the mortgage by which Bennett agreed to keep the property insured for her benefit. Ames v. Richardson, 29 Minn. 330, 13 N. W. 137.

The main contention of plaintiff on this branch of the case is that the indorsement of this clause, together with the assignment by Bennett to the intervener of all the former's claim to the insurance money, was fraudulent in law and in fact, as against Bennett's creditors. It is argued that Bennett was insolvent when he made the assignment; that the assignment was of $2,500, whereas he was under no obligation to secure Mrs. Thompson for more than $1,000, and that it was understood that Bennett should get back the balance of the $2,500 after the debt to Mrs. Thompson was paid. The trial court found as a fact that there was no fraud. There was a preference, it is true, but we are clear that the circumstances are not such that we can say the finding is not sustained by the evidence, or that there was fraud in law. The debt to the intervener was an honest one and was overdue. Bennett, at the time of the transfer, had insurance aggregating $6,000, though he in fact collected but $4,000. The assignment was undoubtedly given as security. The intervener had no knowledge of any fraudulent intent, and in fact Bennett had no such intent. It is well settled in this state that the payment of or securing an honest debt by a debtor is not deemed fraudulent in law, though it operates as a preference, and though it does in fact hinder and delay other creditors, unless some insolvency or bankruptcy law makes such transfer invalid, and then only in aid of an

insolvency or bankruptcy proceeding. Crookston State Bank v. Lee, 124 Minn. 112, 144 N. W. 433; Dyson v. St. Paul Nat. Bank, 74 Minn. 439, 77 N. W. 236, 73 Am. St. 358.

As there was no actual intent to defraud, we hold that the assignment by Bennett to the intervener was valid as against plaintiff, and entitled intervener to payment of her claim out of the fund garnished, unless plaintiff had an equitable lien on such fund that was paramount to the claim of the intervener.

Under the laws of South Dakota, plaintiff had a lien on the building. This lien was clearly superior to the lien of the intervener's second mortgage, and apparently, under the statutes of South Dakota, superior to the lien of the prior mortgage. This may be conceded for the purposes of this case. This conclusion makes it unnecessary to consider the point that the second mortgage was not entitled to record, as, whether this is true or not, we start with the premise that plaintiff's lien on the building was paramount to the intervener's lien under either mortgage. The question is whether, when the building was destroyed by fire, plaintiff's lien attached in equity to the proceeds of the insurance. If it did, it would follow that the assignment by Bennett to the intervener could not operate to destroy this lien. If the lien did not in equity attach to the insurance money, the intervener's claim is clearly superior.

Plaintiff relies upon the principle that a court of equity, whenever it is necessary in order to prevent justice being defeated, will treat the money derived from property as it would the property itself. This principle has been frequently applied to cases where property upon which there was a lien has been sold under a paramount lien, under legal or judicial process or under a testamentary power paramount to the lien. Ness v. Davidson, 49 Minn. 469, 52 N. W. 46, is a good illustration of this doctrine. There real estate upon which there was a mechanic's lien was sold under a testamentary power that was paramount to the lien, the execution of which power discharged the lien from the land. It was held that the sale was in effect a conversion of the land into money, and that the proceeds should be charged with the payment of the debt. But plainly the principle has no application to a case where the property is insured

by the owner for his own or another lienor's benefit, and where this act of the owner results in there being insurance money when the property is destroyed by fire. There has been no sale under a paramount lien under legal or judicial process, or under a testamentary or other power paramount to the lien. The owner was under no obligation to insure the property for the benefit of the lienor, and did not do so. The lienor had an insurable interest and might have protected his rights by insurance. The case of Elgin Lumber Co. v. Longman, 23 Ill. App. 250, relied upon by plaintiff, contains an obiter statement favorable to the contention that a mechanic's lien on land may attach to the proceeds of insurance thereon taken out by the owner, but this statement is opposed both to reason and authority. In Ames v. Richardson, 29 Minn. 330, 13 N. W. 137, this court said that it was well settled that, in the absence of an agreement by the mortgagor to insure for the benefit of his mortgagee, the latter has no right to any advantage whatever from an insurance upon the mortgaged property effected by the former for his own benefit. This is the universal rule as far as we know. A fire insurance policy is a mere personal contract of indemnity against a loss by the person insured. It does not attach to the property or go with the same as an incident. 19 Cyc. 583, 883, and cases cited. The City of Norwich, 118 U. S. 468, 6 Sup. Ct. 1150, 30 L. ed. 134; Farmers Loan & Trust Co. v. Penn Plate Glass Co. 186 U. S. 434, 22 Sup. Ct. 842, 46 L. ed. 1234. We perceive of no reason why the rule should be different in the case of a mechanic's lien than it is in the case of a mortgage. In either case it is the interest of the owner and not the interest of the lienor or mortgagee that is insured. In the absence of contract, or of facts constituting an estoppel, the insured is entitled to the insurance money, and it cannot be taken from him and given to a lien owner or mortgagee, on any doctrine of equity such as plaintiff relies on. 19 Cyc. 887, and cases cited.

Orders affirmed.