# F. C. CLOSUIT v. I. L. MITBY.[1]

January 9, 1953.

No. 35,835.

[1]Reported in 56 N. W. (2d) 428.

*Sullivan & Swenson*, for appellant.
*Joseph W. Ryan*, for respondent.

MAGNEY, JUSTICE.

Plaintiff and defendant are physicians and surgeons. Both practiced in Aitkin. On July 1, 1948, they entered into an oral partnership agreement. Defendant sold to plaintiff a one-half interest in his medical practice, including equipment and property used in the practice and owned by him and excepting his accounts receivable on July 1, 1948, which would be paid within one year and his own personal medical kit. After one year anything that was collected on the old accounts was to be partnership income. Plaintiff paid defendant $3,000 for the one-half interest. Any new equipment or supplies purchased after July 1, 1948, were paid for out of the partnership funds and treated as being owned by the parties jointly in equal shares.

On December 25, 1949, all of the property, records, and equipment of the partnership, having a claimed value of about $10,000, was totally destroyed by fire.

On February 23, 1945, defendant had purchased fire insurance coverage of $4,000 on all his office equipment and supplies. The

policy was for a term of five years. On February 1, 1950, the insurance company paid defendant the full $4,000 on the loss under the policy. Plaintiff claims that a one-half interest in said insurance policy was included in the sale to plaintiff and that, therefore, he is entitled to a one-half interest in the proceeds from such insurance, and he brings this action to recover that amount.

Plaintiff takes the position that the insurance policy here involved was an asset of the partnership, so that, if this policy had been cancelled and a new policy taken out on the partnership property, he would have been entitled to one-half of the unearned premium returned to the insured upon such cancellation. The sole question here is whether the partnership agreement included the insurance policy as an asset of the partnership. Defendant denies that any interest in the policy was sold to, or otherwise acquired by, the plaintiff. The findings of the court were in favor of the plaintiff, and defendant appeals from the order denying his motion for a new trial.

Some additional facts should be stated. At the time plaintiff purchased the said interest in the practice on July 1, 1948, nothing was said about fire insurance coverage. On July 6, plaintiff delivered the $3,000 check to defendant. Plaintiff testified: "At the time I gave the check to Dr. Mitby I said, 'Is this equipment covered by insurance?', and he said, 'Yes, I think there is five or six thousand dollars on it.' " This testimony was later reiterated. Defendant denies any such conversation. A view of the evidence in a light favorable to plaintiff requires a holding that such conversation did take place. It is the only evidence in the record of any conversations between the parties concerning insurance coverage during the negotiations which led up to the consummation of the deal. Plaintiff never saw the policy of insurance. There was no other insurance coverage on the property. The building in which their office was located was supposed to be fireproof. This probably accounts for the fact that so little attention was paid by the parties to fire insurance coverage. Immediately after the fire, defendant called up plaintiff, who was absent from Aitkin, and informed him

of the fire and that the loss was total. Defendant said he thought he had some insurance but was not sure of the amount or whether the policy had lapsed. Plaintiff made no claim to a share of the insurance proceeds at that time. Later on, plaintiff asked defendant if he had heard from the insurance company. Defendant said he would write them. On or about February 1, 1950, the insurance company paid defendant the amount called for by the policy. On January 7 or 8, 1950, plaintiff gave notice that the partnership was terminated on that day, but the parties continued to practice on a fifty-fifty basis until May 31, 1950. After the partnership had been dissolved, plaintiff continued to collect amounts due the partnership and paid defendant one-half of the amount so collected. After August 1, 1950, plaintiff retained defendant's share of the collections and applied it on his claimed interest in the insurance fund. Defendant throughout contended that plaintiff had no interest in the policy or its proceeds.

In the income tax return of the partnership for 1949, the ordinary loss from the fire was fixed at $2,906.40 book value for each partner, with the ordinary net income for each partner, $7,997.65. Since defendant received the $4,000 insurance, he reported a nontaxable gain of $1,093.60, being the difference between his share of the fire loss and the $4,000 he received. Plaintiff's net income was reported as $5,091.25, being the difference between the ordinary net income of each partner and his loss from fire in the amount of $2,906.40. In a notation on the return, it is stated that the $4,000 of insurance received by defendant was placed in a temporary savings account to be used in the immediate future for replacing equipment. This was done in order to receive certain advantages under the federal income tax law.

Plaintiff contends that the income return of the partnership for 1949 indicates an intent that the insurance policy be a part of the assets of the partnership. Defendant contends to the contrary. It would seem that, if such return indicates anything one way or the other, it would be that the policy was not included in the assets of the partnership as plaintiff took his full loss on his one-half interest.

The fact that the $4,000 received by defendant was placed in a temporary savings account to be used in the immediate future for replacing equipment does not indicate that plaintiff had a share in it but that the money would be spent by defendant for new equipment, either for his own use or his share in a partnership. At that time plaintiff had already served notice terminating the partnership.

The court found that a half interest in the insurance policy was included in the sale and that the policy was an asset of the partnership. In its memorandum the court said that the sole issue in the case is the determination of what the agreement was between the parties relative to the question as to whether or not the insurance policy was an asset of the partnership. It quoted 2 Dunnell, Dig. & Supp. § 1827, where it is stated:

"* * * A contract includes not only the promises set forth in express words, but, in addition, all such implied provisions as are indispensable to effectuate the intention of the parties and such as arise from the language of the contract and the circumstances under which it was made."

"The law regards the substance and not the mere form of a contract — the ultimate purpose the parties had in view, rather than the manner agreed on for effecting the purpose."

■ Our standard form of fire insurance policy provides that it shall be void if, without assent of the insurer, the property shall be sold or the policy assigned. M. S. A. 65.01; 3 Dunnell, Dig. & Supp. § 4692; Windey v. North Star Farmers Mut. Ins. Co. 231 Minn. 279, 43 N. W. (2d) 99. Defendant contends that, since a sale of a one-half interest added a new party and risk, the insurer could probably have avoided the policy and that a failure to assign and then obtain insurer's consent is a circumstance in defendant's favor. In Brigham v. Wood, 48 Minn. 344, 348, 51 N. W. 228, 229, we said:

"* * * The change in the ownership by the retirement of Cole from the firm would at most have merely made the policy voidable at the election of the insurance company. Had any such issue been tendered * * * the plaintiffs might have proved that the insurance

company waived the forfeiture, or consented to the continuance of the policy notwithstanding the change produced by the retirement of Cole."

In the instant case that question would be purely academic as the insurance company paid the full amount called for by the policy to defendant without question, and such payment is no indication one way or the other in the determination of the question here involved.

■ Plaintiff and defendant each had an insurable interest in the partnership assets. Each could have taken out a separate policy for his own benefit on that interest. The loss from the fire was about $10,000, so the loss to defendant of his one-half interest in the property exceeded the amount of the insurance policy in question.

In 29 Am. Jur., Insurance, § 341, it is stated:

"It is the general rule that an insurable interest in the property of a partnership exists in both the partnership and the partners, and that a partner has an insurable interest in the firm property which will support a policy taken out thereon for his own benefit."

■ The general nature of the relation between an insurer and an insured is purely a contractual one personal to the insured, even though the policy must in form comply with statutory or standard policy provisions. In 29 Am. Jur., Insurance, § 126, the law is stated thus:

"* * * it is generally held or recognized that insurance policies and contracts are merely personal ones between the insurer and the insured. A contract of fire insurance, for example, appertains to the person or party to the contract, and not to the thing which is subjected to the risk against which the owner is protected. Accordingly, *in the absence of assignment or of express stipulations of the parties to such an effect, contracts or policies of insurance do not attach to or run with the property insured, whether the property is real or personal.* In case of a conveyance or assignment of the property, they do not go with it as an incident thereto, but

they are, rather, special agreements with the persons insured, against such loss or damages as they may sustain." (Italics supplied.)

In Cetkowski v. Knutson, 163 Minn. 492, 494, 204 N. W. 528, 529, 40 A. L. R. 599, we said:

"Long ago, it became too well settled to be questioned, that policies of insurance against fire are personal contracts with the assured, which do not attach to the realty, or in any manner go with the same, as incident to a conveyance or transfer of the title to lands. Culbertson v. Cox, 29 Minn. 309, 13 N. W. 177, 43 Am. St. 204; Imperial Elev. Co. v. Bennett, 127 Minn. 256, 149 N. W. 372; Remington v. Sabin, 132 Minn. 372, 157 N. W. 504. But the proceeds of an insurance policy may be affected by a trust for the benefit of someone other than the named insured."

The facts here, however, do not create a trust situation, and no one claims that they do. This action is based entirely on a claimed contract between the parties.

In Brownell v. Board of Education, 239 N. Y. 369, 374, 146 N. E. 630, 632, 37 A. L. R. 1319, the court said:

"* * * In common parlance the buildings are insured, but everyone who stops to consider the nature of the insurance contract understands that they are not. Both in the forum and the market place it is known that the insurance runs to the individual insured and not with the land."

In Culbertson v. Cox, 29 Minn. 309, 311, 13 N. W. 177, 178, Mr. Justice Mitchell said:

"* * * It is now too well settled to be questioned, that policies of insurance against fire are personal contracts with the assured, which do not attach to the realty, or in any manner go with the same, as incident to a conveyance or transfer of the title to lands; that the contract is confined to the parties; and that, as a general rule, no equity attaches upon the proceeds of such policies in favor of third parties, who, in the character of grantee, mortgagee, or

creditor, may sustain loss by the destruction of the property. In accordance with this doctrine, it is also well settled that a sale or transfer of the property which is the subject-matter of the insurance will deprive the vendor of all interest in the policy, without conferring the right to enforce it on the vendee; the vendor being precluded from recovering from the fact that, having no interest in the property, he has suffered no loss; and the vendee, because he can claim nothing under a contract to which he is a stranger, and which was not made with a view to his benefit."

That rule of law applies to personalty as well.

The general rule as stated in 29 Am. Jur., Insurance, § 126, and quoted above, that in the absence of assignment or express stipulation of the parties to such an effect policies of insurance do not attach to or run with the property insured whether the property is real or personal and in case of a conveyance or assignment they do not go with it as an incident thereto, must be applied to the facts of the instant case. There was no assignment of the policy here involved. The question then remains whether there was an oral expressed agreement. We have quoted all the conversation as claimed by plaintiff relative to the existence of insurance coverage on the partnership property insured. Plaintiff asked defendant if the property was covered by insurance. Defendant said he thought there was some. The question asked called for information which was given. To construe the conversation as an agreement between the parties that plaintiff was purchasing a half interest in the insurance policy is extending the meaning of the words used too far. There was nothing of a contractual nature in the conversation. It may be that plaintiff thought he was getting a one-half interest in the insurance policy as part of the property he was purchasing. But that does not create a contract. There is nothing to indicate that defendant thought he was selling a one-half interest. The mere mention of insurance as claimed by plaintiff does not include it as part of the assets of the transaction. The conversation between the parties cannot be construed as a stipulation to include the policy of insurance.

Plaintiff intimates that the implied provisions of the partnership agreement contain the insurance policy also. Whatever is necessarily implied in a contract is as much a part thereof as if expressly stated therein, but the implication must result from the language employed in the instrument or be indispensible to carrying the intention of the parties into effect. 12 Am. Jur., Contracts, § 239. The authority cited by the court in its memorandum is to the effect that a contract includes all such implied provisions as are indispensable to effectuate the intention of the parties. The inclusion of the insurance policy was not indispensable to effectuate the intention of the parties to transfer one-half of the business or practice from one party to the other. It had nothing to do with the carrying on of the partnership in the practice of medicine. The equipment of the physician's office, the one-half interest transferred to plaintiff and the one-half interest retained by defendant, was fully sufficient to carry out the business of the partnership. To that extent, at least, the insurance policy would add nothing. It was not a necessary or indispensable item in the carrying on of a medical practice partnership business. The situation and the language used do not show an intent. There was no assignment of the policy, and there was no express contract or stipulation to the effect that the policy was included in the deal. An unexpressed intention is insufficient to create a contract such as here claimed. The policy does' not go with it as an incident thereto. We are therefore of the opinion that the court erred in awarding a one-half interest in the proceeds of the insurance policy to the plaintiff.

Order reversed.