Mark WINBERG, et al., Respondents,

and

First Federal Savings and Loan Association of Grand Rapids,
plaintiff-intervenor, Appellant,

v.

MARYLAND CASUALTY
COMPANY, Respondent.

No. C5–88–1114.

Court of Appeals of Minnesota.

Jan. 10, 1989.

Review Denied Feb. 10, 1989.

John P. Weber, Weber & Henrichsen, Grand Rapids, for Mark Winberg, et al.

Dennis L. O'Toole, Robin J. Gernandt, Lano, Nelson, O'Toole & Fecker, Ltd., Grand Rapids, for First Federal Sav. and Loan Ass'n of Grand Rapids, plaintiff-intervenor, appellant.

Lee F. Haskell, Cosgrove & Haskell, Minneapolis, for Maryland Cas. Co.

Heard, considered and decided by FORSBERG, P.J., and CRIPPEN and NORTON, JJ.

## OPINION

FORSBERG, Judge.

This is an appeal from summary judgment determining that Mark and Patricia Winberg (Winbergs) were entitled to insurance proceeds for damage to their home. At the time the damage occurred, First Federal Savings and Loan Association of Grand Rapids (Federal) held a mortgage. Federal also claimed the insurance proceeds. We reverse.

## FACTS

The facts are not disputed. On December 4, 1981, Winbergs mortgaged their home to Federal for $23,000. In 1986 the premises were insured by Winbergs for $48,000. On February 17, 1986, water pipes froze and burst, causing damage to the premises. Repairs were estimated at $1,667.

Winbergs' insurance company, Maryland Casualty Company (Maryland), refused to pay and in August 14, 1986, Winbergs commenced an action under the policy against Maryland. Winbergs defaulted on their mortgage and on February 20, 1987, Federal began foreclosure by advertisement. Federal bid the full amount due plus costs on April 15, 1987, and was high bidder.

On October 15, 1987, the period of redemption terminated and Federal became the fee owner of the property. On October 26, 1987, Winbergs settled with Maryland for $6,000. Maryland issued a check payable to both Federal and Winbergs on November 24, 1987. Federal brings this action for the insurance proceeds. The damage to the house apparently was not repaired.

Both sides moved for summary judgment. Minutes before the summary judgment was heard, respondents gave an affidavit to appellants and the court. The affidavit was from Winbergs' attorney and stated that Winbergs' property was appraised in 1985. A copy of the appraisal was attached valuing the house at $36,500 to $36,900.

The trial court granted Winbergs' motion and found they alone were entitled to the insurance proceeds. Federal appeals.

## ISSUES

1. Did the trial court properly consider evidence of an appraisal at the summary judgment hearing?

2. Did the trial court err in finding the mortgagee was not entitled to insurance proceeds after a foreclosure for a loss occurring prior to foreclosure?

## ANALYSIS

### I.

■ The trial court's memorandum makes two references to the appraisal value of the property. Federal argues these statements show that the court relied on the appraisal submitted with respondents' attorney's affidavit. Federal claims this affidavit was improperly before the court because it was not submitted in a timely manner. They also claim the appraisal was misinterpreted and is irrelevant.

The rules provide:

A motion may be supported by papers on file by reference; supporting papers not on file shall be served with the motion; and, except as otherwise provided in Rule 59.04, opposing affidavits may be served not later than one day before the hearing, unless the court permits them to be served at some other time.

Minn.R.Civ.P. 6.04. Winbergs served no supporting documents with their summary judgment motion and the supporting affidavit with the attached appraisal was served to opposing counsel and the court moments before the summary judgment motion. This was not within the prescribed time frame. However, the rule provides that the court can permit service at other times. Here the court allowed service and Federal did not object at the time.

Federal contends the court improperly interpreted the appraisal. The appraisal was done in 1985. As Federal points out, that was prior to the damage caused by the burst pipes. Federal also claims there was other waste committed and that market prices in northeastern Minnesota have declined. Federal is probably correct in asserting the appraisal was not accurate. Because of late service, Federal was unable to counter with an up-to-date appraisal.

However, the value of the property is irrelevant. At issue are insurance proceeds which result from contractual obligations. The court awarded the proceeds to Winbergs based on the theory that any interest the bank had was destroyed with the foreclosure. While the appraisal should not have been admitted, since it did not form the basis for the court's decision, it is harmless error.

### II.

■ The policy taken out by Winbergs provided:

The word "mortgagee" includes trustee. If a mortgagee is named in this policy, any loss payable under Coverage A or B shall be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment shall be the same as the order or precedence of the mortgages.

The loss occurred on February 17, 1986. At that time Federal held a mortgage from Winbergs. Under the terms of the insurance policy, Federal was entitled to the insurance proceeds up to the amount of the debt. The amount paid would either repair the damage or be applied to reduce the mortgage. *See Minnesota Federal Savings and Loan Association v. Iowa National Mutual Insurance Co.*, 372 N.W.2d 763, 767 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. Nov. 1, 1985); *Maxcy v. New Hampshire Fire Ins. Co. of Manchester*, 54 Minn. 272, 275, 55 N.W. 1130, 1130 (1893).

Minnesota law provides

When the whole, or any part, of the losses payable, in terms or otherwise, to or for one or more mortgagees, upon proof before payment of the rights of the parties, the company shall pay the same in the order of priority to the extent of its liability and every such payment to such extent shall be payment and satisfaction of its liability under the policy.

Minn.Stat. § 65A.11 (1986). Again, under the statute, at the time the incident occurred, as mortgagee, Federal was entitled to the insurance proceeds.

■ For reasons which are not explicit in the record, the insurance company refused payment and Winbergs were forced to take the insurance company to court to gain payment. As a result, payment was delayed and was not made until after the foreclosure and expiration of the redemption period. Federal argues that a delay by the insurance company to pay should not

be allowed to affect Federal's rights. We agree. Had the insurance company paid promptly, Federal would receive the proceeds.

Once Federal's rights to the proceeds vested—i.e. at the time of the incident—the subsequent events did not interfere with that interest. *Carlson v. Presbyterian Board of Relief for Disabled Ministers,* 67 Minn. 436, 70 N.W. 3 (1897) supports the proposition that the mortgagee is entitled to insurance proceeds even after foreclosure. In *Carlson,* the house was insured, foreclosed on and purchased by the mortgagee, and then destroyed before the redemption period expired. The court found that under these circumstances the mortgagee's interest in the property had not been extinguished.

> Where the mortgagee is the purchaser at the foreclosure sale, he simply receives a conditional conveyance of the premises for the payment of his debt, and continues to have a lien on the premises for the amount of the purchase price * * *. His interest in the premises is practically the same after the sale as before * * *. Until the time to redeem expires, he has a lien on the premises, and holds them for the security of his bid.

*Id.* at 439, 70 N.W. at 4. In *Carlson* the mortgagee was awarded the insurance proceeds because loss occurred while the mortgagee still had an interest in the home identical to the interest it had before foreclosure. *Id.*

### DECISION

Federal held the mortgage at the time of the loss and by contract and statute is entitled to the insurance proceeds. A delay in payment by the insurance company does not affect this right.

REVERSED.