H. Marilyn **NELSON, et al., Respondents,**

v.

**ILLINOIS FARMERS INSURANCE COMPANY, Appellant.**

No. C6–97–190.

Court of Appeals of Minnesota.

Aug. 19, 1997.

Review Denied Oct. 21, 1997.

Kevin F. Mark, Red Wing, for Respondents.

Jon A. Hanson, Betsy L. Marstad, Hanson Lulic & Krall, Minneapolis, for Appellant.

Considered and decided by PETERSON, P.J., and NORTON and AMUNDSON, JJ.

## OPINION

NORTON, Judge.

Appellant insurance company contends the trial court erred when it found coverage for respondents and awarded them damages and prejudgment interest. In a notice of review, respondents contend the trial court miscalculated the date from which prejudgment interest accrued. We affirm.

## FACTS

Toby and Catherine Marquardt obtained property insurance from appellant Illinois Farmers Insurance Company (Illinois Farmers) after they bought a home from Helen V. Peterson pursuant to a contract for deed. Peterson is the mother of respondents H. Marilyn Nelson and Donald W. Peterson. At the time of the sale, Nelson was her mother's

attorney-in-fact and appeared as such on the contract for deed. Nelson's name also appeared on the declarations page of the insurance policy, where it listed Peterson as the mortgagee in care of Nelson's mailing address.

In July 1991, Peterson conveyed her interest in the property by warranty deed to respondents as tenants in common subject to a reservation of a life estate for herself. On March 19, 1993, Peterson died, terminating her life estate and any interest she had in the property. Respondents failed to inform Illinois Farmers of the 1991 conveyance or of their mother's death; respondents admit that they had virtually no contact with Illinois Farmers to advise them of their remainder interest in the property or of their mother's interest as a life tenant. Nelson testified that, originally, she called her local agent annually to ensure that the Marquardts had paid the insurance premium, but, eventually, the agent told her that Illinois Farmers would inform her if the Marquardts did not pay the premiums.

On September 25, 1994, a fire occurred at the property in issue. The Marquardts filed a claim with Illinois Farmers for damages they sustained. Illinois Farmers denied the claim based, in part, on the fact that its investigation revealed that the fire may have been intentionally set, which would void the policy. Respondents filed proof of loss claims with Illinois Farmers in which they explained they were Helen Peterson's heirs and attached Nelson's letter of appointment as personal representative of Helen Peterson's estate. In an affidavit, Nelson explained that she and her brother fully intended that the coverage and benefits afforded their mother, as the mortgagee under the insurance policy, would be assigned and transferred to them along with all of the other interests and obligations that Helen Peterson had in that property. Based on that belief, respondents did not seek separate coverage to protect their interests in the property.

Illinois Farmers denied respondents' claim and rejected their proofs of loss for the following reasons: Helen Peterson had an insurable interest in the property as a fee simple owner subject to contract for deed; the application identified Helen Peterson as "mortgagee"; the warranty deed transferred Helen Peterson's interest in the property to respondents, subject to her reservation of a life estate; respondents failed to disclose the transfer of property from Helen Peterson to respondents; neither respondent was named in the policy as an insured, a mortgagee, or a loss payee at the time of the fire; and the interest of Helen Peterson and her estate ceased as of her death on March 19, 1993. Illinois Farmers determined that the insurable interest of Helen Peterson or her estate had ceased in the property and had terminated before the fire occurred. Consequently, according to Illinois Farmers, neither the estate of Helen Peterson nor respondents had any basis for a right of recovery of the insurance proceeds under the insurance policy.

Respondents brought a suit against Illinois Farmers to enforce coverage. After a hearing on the parties' cross-motions for summary judgment, the district court granted respondents' motion, denied Illinois Farmers' motion, and entered a partial final judgment. After a trial on the damages issue, the trial court entered judgment in favor of respondents in the amount of $30,830.33 plus prejudgment interest.

## ISSUES

1. Did the district court err when it determined that respondents had a right to insurance benefits because they "stepped into the shoes of Helen Peterson as mortgagee"?

2. Did the trial court err in calculating prejudgment interest under Minn.Stat. § 549.09 to begin accruing 60 days after the proof of loss was filed?

## ANALYSIS

Illinois Farmers has appealed from summary judgment on liability and from the trial court's determination of damages. On review of summary judgment, this court must determine whether any genuine issues of material fact exist and whether the district court erred in its application of the law.

*Wartnick v. Moss & Barnett,* 490 N.W.2d 108, 112 (Minn.1992). We must view the evidence in the record in a "light most favorable to the party against whom judgment was granted." *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993). The interpretation of the language and intent of an insurance policy is a question of law which this court may examine de novo. *Garrick v. Northland Ins. Co.,* 469 N.W.2d 709, 711 (Minn.1991).

**1. Coverage**

■ Illinois Farmers challenges coverage under the insurance policy because respondents allegedly were not insureds, had not been listed as "mortgagee[s]," and were not parties to the contract. Illinois Farmers correctly states that the relationship between an insurer and the insured is contractual in nature and personal to the insured. *Closuit v. Mitby,* 238 Minn. 274, 279, 56 N.W.2d 428, 431 (1953). Furthermore, by its very nature, a fire insurance contract pertains to the party to the contract, not to the property that is subjected to the risk. *Id.,* 56 N.W.2d at 431–32. Consequently, in the absence of some agreement otherwise, a fire insurance policy generally does not run with the insured property, whether realty or personalty. *Id.,* 56 N.W.2d at 431.

Illinois Farmers overlooks the fact, however, that Helen Peterson was not an "insured" under the policy; she was the mortgagee. The Marquardts were the insureds. As a mortgagee, Helen Peterson was entitled to recover for a loss under the policy. Minn. Stat. § 65A.11 (1996), *quoted in Winberg v. Maryland Cas. Co.,* 434 N.W.2d 274, 276 (Minn.App.1989) (mortgagee entitled to insurance proceeds), *review denied* (Minn. Feb. 10, 1989). Consistent with that law, the mortgage clause of the fire insurance policy here contains this provision:

> The word "mortgagee" includes trustee or loss payee. If a mortgagee is named in this policy, a covered loss will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of the mortgages.

Illinois Farmers contends that provision does not apply to respondents, however, because a mortgagee's interest in fire insurance cannot be assigned. We disagree on three grounds.

■ First, respondents had an interest in the insurance policy at the time of Helen Peterson's death even though she had not expressly assigned the insurance coverage to them along with the property. Their interest in the policy stems from their interest in the property. Respondents gained a present interest in the property when they received a remainder interest in 1991. *See Hagen v. Hagen,* 136 Minn. 121, 123–24, 161 N.W. 380, 380–81 (1917) (holding that parent's deed of homestead "convey[ed] and warrant[ed] a present interest in the land" to the grantee/child, "vest[ed] the fee in the grantee and reserve[d] a life estate in the grantor, and [was] not testamentary"). At the same time, they gained an interest in the policy. *See Kintzel v. Wheatland Mut. Ins. Ass'n,* 203 N.W.2d 799, 805 (Iowa 1973) (assignee of mortgage receives rights assignor had in insurance policy); *see also Central Union Bank v. New York Underwriters' Ins. Co.,* 52 F.2d 823, 825 (4th Cir.1931) (mortgagee may transfer along with debt any rights arising from fire insurance policy and assignee then has right to enforce policy).

■ Second, contrary to its argument, Illinois Farmers' insurance policy did not require notice of transfer of ownership before respondents could be entitled to recover loss proceeds. Special provisions attached to the insurance policy at issue here deleted the clause that required, as a prerequisite to receiving loss proceeds, that the mortgagee notify the insurer of any change in ownership, occupancy, or substantial change in risk. *See* Special State Provisions–Minnesota, Form 1335 (1st ed.). Consequently, Helen Peterson was not bound to notify Illinois Farmers in the event she changed ownership of her property.

■ Third, and perhaps most importantly, the law distinguishes between an insured and a mortgagee in terms of the right to recover insurance proceeds. While the insured's interest is personal and may not pass to a nonparty to the contract, the general rule is that an assignment of the note and mortgage carries with it whatever rights the

assignor had in the insurance policy, without the need for the consent of the insurer. *See Kintzel,* 203 N.W.2d at 805 (citing general insurance provisions in 45 C.J.S. Insurance § 427(b)(1)). This rule arises from the broader general rule that the assignment of debt carries with it all liens and every remedy and security incidental to the assigned matter that the assignor could have used as payment or indemnity, even if the incidental rights were not listed in the instrument of assignment and were unknown to the assignee at the time of transfer. *Id.* (citing 6 Am.Jur.2d, Assignments § 121); *see Woodland Co. v. Mendenhall,* 82 Minn. 483, 491, 85 N.W. 164, 166 (1901) (assignment and transfer of debt carries with it all liens or securities for payment); *see also State ex rel. Southwell v. Chamberland,* 361 N.W.2d 814, 818 (Minn.1985) (valid assignment generally vests in assignee same right, title, or interest that assignor had in property assigned).

> Where an insurance policy on property is issued to the mortgagors, payable to the mortgagee as his interest may appear, the assignment by the mortgagee of his interest in the policy is not a violation of a condition against the assignment thereof. Even though the effect of the standard mortgage clause in a fire insurance policy is to create a separate contract of insurance of the interest of the mortgagee, such contract does not involve a relation of personal trust and confidence so as to preclude assignment thereof without the insurer's consent, to a transferee of the mortgage, in the absence of any restriction in the policy.

43 Am.Jur.2d *Insurance* § 801 (1982).

■ The district court correctly noted that the object of insurance policies requiring insurer consent is "to prevent an increase of risk and hazard of loss by change of ownership without the knowledge of the insurer." *See National Am. Ins. Co. v. Jamison Agency, Inc.,* 501 F.2d 1125, 1128 (8th Cir.1974). Indeed, the test used to determine whether a change in ownership is sufficient to void an insurance policy is whether no change in fact of title has occurred, if evidence of the change in title is nominal and not of the nature to increase the risk of fire or to reduce protection of the property from fire, then the change in ownership has not violated the policy. *Western Fire Ins. Co. v. Pitts,* 683 S.W.2d 739, 740 (Tex.App.1984). *National* involved an insurance provision that nullified coverage of an assignee if the insured failed to obtain the insurer's consent before a change in ownership of the insured company. 501 F.2d at 1128. In overriding the policy, the court reasoned that the change in ownership and later dissolution of the company presented no greater risk and hazard of loss than before. *Id.*

Following that analysis, the district court here held that the transfer of ownership did not change Illinois Farmers' risk because respondents did not take possession of the property upon assignment; the Marquardts continued to occupy the property. Respondents merely "stepped into the shoes" of their mother as mortgagee, much as would one bank that was assigned the debt and mortgage from another mortgagee bank. The transfer to respondents did not increase the risk of fire or decrease the level of care to protect the property. Moreover, the mortgage clause did not create a contract of personal trust and confidence between the mortgagees and Illinois Farmers as it did between Illinois Farmers and the insureds. The mortgage clause simply existed to protect the mortgagee's interest in the property. The Minnesota laws that omit the notice requirement and allow an assignee/mortgagee to enforce insurance contract rights support the district court's determination.

The district court properly determined that respondents, as mortgagees, were entitled to coverage.

## 2. Calculation of prejudgment interest

■ In their notice of review, respondents contend the trial court erroneously calculated prejudgment interest from the wrong date under Minn.Stat. § 549.09 (1996) instead of Minn.Stat. § 334.01 (1996). We disagree.

Minn.Stat. § 549.09(b) is entitled "Interest on verdicts, awards, and judgments" and provides:

> Except as otherwise provided by contract or allowed by law, preverdict, preaward, or

prereport interest on pecuniary damages shall be computed as provided in clause (c) from the time of the commencement of the action or a demand for arbitration, or the time of a written notice of claim, whichever occurs first * * *.

Clause (c) provides that interest shall be computed as simple interest per annum, at a rate consistent with the U.S. Treasury. *Id.* Section 549.09 applies to final judgments for liquidated or ascertainable damages that do not depend on contingencies. *Jostens, Inc. v. CNA Ins. Continental Cas. Co.*, 336 N.W.2d 544, 546 (Minn.1983). The legislature intended prejudgment interest to compensate the plaintiff for the loss of use of money, deprive the defendant from making a gain as a result of using plaintiff's money, and promote settlement. *Burniece v. Illinois Farmers Ins. Co.*, 398 N.W.2d 542, 544 (Minn.1987) (citing *Stroh Container Co. v. Delphi Indus.*, 783 F.2d 743, 752 (8th Cir.1986) and interpreting Minn.Stat. § 549.09).

In contrast, Minn.Stat. § 334.01 applies to interest on "legal indebtedness," such as wages and tax refunds. *See General Mills, Inc. v. State*, 303 Minn. 66, 71, 226 N.W.2d 296, 300 (1975) (calculating interest under section 334.01 for tax refund from date of filing of petition until actual refund receipt); *Henry v. Metropolitan Waste Control Comm'n*, 401 N.W.2d 401, 407 (Minn.App. 1987) (holding employee entitled to interest under section 334.01 on withheld back pay from date paycheck was due).

The underlying contract for deed between the Marquardts and Peterson, and now respondents, was in the total amount of $35,-400, with payments of $280 per month and the balance of $31,860 due on or before April 30, 1995. This contract set interest at ten percent. After the fire, the Marquardts continued making monthly payments on the property until January 1, 1995. As of that date, the Marquardts still owed $30,830 on the principal, plus $1,798 in interest under the contract for deed. On June 29, 1995, respondents filed their proof of loss claim. Under section 549.09, once respondents filed that notice of claim, they were entitled to use of that money and Illinois Farmers deprived them of its use by denying the claim. Under these circumstances, the trial court followed the formula set in section 549.09 and correctly calculated the prejudgment interest to accrue from August 28, 1995, which was 60 days after respondents presented their proof of loss form. *See* Minn.Stat. § 65A.01 (standard fire insurance policy requiring insurer to pay amount of loss to insured 60 days after proof of loss claim).

## DECISION

The trial court properly determined that respondents, as mortgagees, are entitled to insurance coverage based on a contract for deed and properly calculated prejudgment interest under Minn.Stat. § 549.09.

**Affirmed.**