BEST BUY STORES, L.P., Plaintiff,

v.

DEVELOPERS DIVERSIFIED REALTY CORPORATION, Benderson–Wainberg Associates, LP, DDR MDT Cool Springs Point LLC, DDRA Ahwatukee Foothills, LLC, DDR Flatiron LLC, DDRA Community Centers Four, LP, DDR MDT Lakepointe Crossing, LP, DDR MDT Great Northern, LLC, DDR MDT Shoppers World, LLC, DDR MDT Riverdale Village Outer Ring, LLC, DDR Hendon Nassau Park II, LP, DDRC PDK Salisbury LLC, DDR MDT Fayetteville Spring Creek, LLC, DDR MDT Turner Hill Marketplace, LLC, JDN Realty Corporation, JDN Development Company, Inc., BG Boulevard III, LLC and John Doe # 1, Defendants.

Civil No. 05–2310 (DSD/JJG).

United States District Court,
D. Minnesota.

May 25, 2010.

---

Thomas C. Mahlum, Esq., Joel A. Mintzer, Esq. and Robins, Kaplan, Miller & Ciresi, Minneapolis, MN, and Robert A. Machson, Esq., Weston, CT, counsel for plaintiff.

James L. DeFeo, Esq., Jennifer A. Fleming, Esq., Steven S. Kaufman, Esq., Thomas L. Feher, Esq. and Thompson Hine, LLP., Cleveland OH; Marc J. Zwillinger, Esq., Washington, D.C. and D. Charles Macdonald, Esq., Martin S. Chester, Esq. and Faegre & Benson, Minneapolis, MN, counsel for defendants.

### ORDER

DAVID S. DOTY, District Judge.

This matter is before the court upon the motion of plaintiff Best Buy Stores, L.P. ("Best Buy") for voluntary dismissal without prejudice and entry of judgment. Based upon a review of the file, record and proceedings herein, and for the following reasons, the court grants Best Buy's motion in part.

### BACKGROUND

This damages dispute arises following the court's grant of summary judgment in favor of Best Buy against defendants Developers Diversified Realty Corporation ("DDRC") and fourteen owners of shopping centers (the "landlord defendants")[1] (collectively, "Defendants"). The underlying commercial landlord-tenant dispute concerned leases between the landlord defendants and Best Buy.[2] With minor variation, each lease agreement required the landlord defendant to obtain property and liability insurance for the common areas of the shopping center and allowed the landlord defendant to charge Best Buy its pro rata share of the cost of that insurance. (*See* Mintzer Decl. [Doc. No. 655] Exs. 1 arts. 9(F), 9(H); 2 art. 22.2; 3 art. 22.6; 4 art. 22.2; 5 art. 22.2; 6 arts. 4, 19; 7 art. 22.2; 8 art. 22.2; 9 art. 23.2; 10 art. 22.2; 11 art. 22.2; 12 art. 12.7; 13 art. 13(A); 14 art. 23(b); 15 art. 22.2.)

DDRC owned the landlord defendants and managed the properties. As property manager, DDRC procured blanket insurance policies with high deductibles—typically $100,000—from third-party commercial insurance companies, and then charged the landlord defendants a pro rata

---

1. The landlord defendants are: DDRA Ahwatukee Foothills, L.L.C. ("Ahwatukee"); DDR MDT Fayetteville Spring Creek, L.L.C. ("Spring Creek"); DDR Flatiron, L.L.C. ("Flatiron"); JDN Realty Corp. ("JDN Douglasville" and "JDN Overlook"); DDR MDT Turner Hill Marketplace, L.L.C. ("Turner Hill"); DDR PDK Salisbury, L.L.C. ("Salisbury"); DDR MDT Shoppers World, L.L.C. ("Shoppers World"); DDR MDT Riverdale Village Outer Ring, L.L.C. ("Riverdale"); DDR Hendon Nassau Park II, L.P. ("Nassau Park"); Benderson–Wainberg Associates, L.P. ("Wrangleboro"); BG Boulevard III, L.L.C. ("Boulevard"); DDR MDT Great Northern, L.L.C. ("Great Northern"); DDR MDT Cool Springs Pointe, L.L.C. ("Cool Springs"); and DDR MDT Lakepointe Crossing, L.P. ("Lakepointe").

2. The relevant lease years are Ahwatukee (2000–05); Spring Creek (2002–05); Flatiron (2004–05); JDN Douglasville (2003–05); JDN Overlook (2003–05); Turner Hill (2003–05); Salisbury (2004–05); Shoppers World (2000–05); Riverdale (2002–05); Nassau Park (1998–2005); Wrangleboro (2004–05); Boulevard (2004–05); Great Northern (1998–2005); Cool Springs (2000–05); Lakepointe (2002–05). (Order, 636 F.Supp.2d at 873 n. 2; Ex. List [Doc. No. 661] Ex. N.)

share of that coverage. As a result, DDRC was responsible for losses below the deductible, and it also charged the landlord defendants for retaining that risk (the "first-dollar and captive-coverage programs").[3] The landlord defendants in turn charged Best Buy its pro rata share of the cost of the insurance and first-dollar and captive-coverage programs. On September 30, 2005, Best Buy began this action against DDRC and two landlords. Following several amended complaints, the action included claims of breach of contract, breach of fiduciary duty and fraud and a request for a declaratory judgment against the present Defendants. (*See* Fifth Am. Compl. [Doc. No. 357].)

On July 14, 2009, 636 F.Supp.2d 869 (D.Minn.2009), the court granted Best Buy's motion for summary judgment on its breach of contract and declaratory judgment claims. The court determined that the sole issue for summary judgment was "whether Best Buy was properly charged under the lease agreements for the first-dollar and captive premiums." (Order, 636 F.Supp.2d at 878.) The court found that "the first dollar program and captive coverage were not commercial insurance policies" and that Defendants breached the lease agreements by charging Best Buy for the first-dollar and captive-coverage programs. (*See id.* at 880; *see also id.* at 880–81, 881–83, 883–85.) Accordingly, the court determined that "under the plain meaning of the agreement[s], Best Buy is responsible solely for its share of the actual insurance that the lease agreement[s] required [the landlord defendants] to maintain." (*Id.* at 880; *see also id.* at 880, 881–82, 883, 884.) Thereafter, the parties failed to resolve the value of damages. Best Buy brought the instant motion seeking voluntary dismissal and entry of judg-

ment for damages and interest, additional damages for lease years after 2005 and a declaration that future insurance should be "commercially reasonable." The court now considers Best Buy's motion.

## DISCUSSION

### I. Dismissal of Claims

Best Buy seeks dismissal of its fraud claims and all claims that accrued before April 11, 2000. A plaintiff may only dismiss claims after a motion for summary judgment upon stipulation by the parties or by court order on terms the court considers proper. Fed.R.Civ.P. 41(a)(1)(A)(ii), (a)(2). The primary purpose of Rule 41(a)(2) is to prevent voluntary dismissals that unfairly affect defendants. *See Paulucci v. City of Duluth*, 826 F.2d 780, 782 (8th Cir.1987). The court assesses fairness to the defendant by considering:

> (1) the defendant's effort and the expense involved in preparing for trial, (2) excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, (3) insufficient explanation of the need to take a dismissal, and (4) the fact that a motion for summary judgment has been filed by the defendant.

*Id.* at 783.

Best Buy argues that it has neither delayed prosecution of the action, nor is it attempting to avoid a summary judgment motion by Defendants. Defendants argue that they have spent significant time and money defending against Best Buy's claims, and urge the court either to dismiss the claims with prejudice or award costs and fees. This breach of contract action began in 2005, and the court finds that Defendants' years of effort and expense requires dismissing Best Buy's claims with prejudice at this stage. Therefore, the court grants in part Best

---

**3.** Beginning in 2005, the first-dollar program operated through two captive companies (the "captive-coverage program") that DDRC cre-

ated and structured to avoid risk transfer and loss of tax advantage.

Buy's motion to dismiss its remaining claims, and dismisses those claims with prejudice.

## II. Entry of Judgment

Best Buy argues that it is entitled to damages[4] in the amount it paid for the first-dollar and captive-coverage programs:

| Lease Agreement | Lease Years | Total |
| --- | --- | --- |
| Ahwatukee | 2000–2005 | $ 45,429.75 |
| Spring Creek | 2002–2005 | $ 30,695.00 |
| Flatiron | 2004–2005 | $ 15,025.00 |
| JDN Douglasville | 2003–2005 | $ 24,524.00 |
| Turner Hill | 2003–2005 | $ 24,783.00 |
| Salisbury | 2004–2005 | $ 8,269.00 |
| Shoppers World | 2000–2005 | $ 60,962.46 |
| Riverdale | 2002–2005 | $ 35,875.00 |
| Nassau Park | 1999–2005 | $ 58,001.00 |
| Wrangleboro | 2004–2005 | $ 20,810.99 |
| Boulevard | 2004–2005 | $ 22,051.77 |
| Great Northern | 1999–2005 | $ 54,917.00 |
| JDN Overlook | 2004–2005 | $ 23,369.00 |
| Cool Springs | 2000–2005 | $ 46,491.00 |
| Lakepointe | 2002–2005 | $ 23,942.00 |
| Total | | $495,145.97 |

(*See* Second Mintzer Decl. Ex. E at E–2.)[5] Defendants argue that Best Buy's motion is untimely, and that material issues of fact remain over the value of damages.

### A. Timeliness of Motion

Defendants first argue that the instant motion is an untimely summary judgment motion in violation of the court's December 11, 2008, scheduling order. According to Defendants, the July 14, 2009, order only addressed liability, not damages. Best Buy counters that no fact issues remain and that entry of judgment under Rule 58 of the Federal Rules of Civil Procedure is proper following summary judgment. The court agrees that entry of judgment is proper, and addresses Defendants' arguments about disputed facts below.

### B. Damages

■ As an initial matter, the court must determine which state's law applies to the issue of damages for breach of the lease agreements. In diversity cases, the court applies the forum state's conflict-of-laws analysis to questions of substantive law. *Schwan's Sales Enters., Inc. v. SIG Pack, Inc.*, 476 F.3d 594, 595–96 (8th Cir.2007). Minnesota courts first "determine that a conflict exists between the laws" of different states relevant to the issue. *Nodak Mut. Ins. Co. v. Am. Family Mut. Ins. Co.*, 604 N.W.2d 91, 93–94 (Minn.2000) (citation omitted). "A conflict exists if the choice of one forum's law over the other will determine the outcome of the case." *Id.* at 94.

■ Minnesota measures damages for breach of contract as the amount that will place Best Buy in the same position as if Defendants had complied with the contracts. *See Logan v. Norwest Bank Minn., N.A.*, 603 N.W.2d 659, 663 (Minn. Ct.App.1999). Defendants agree that the other potentially applicable states' law uses the same standard.[6] Therefore, no

---

4. Best Buy seeks entry of judgment for lease years 1999 through 2006. This action, however, concerns lease years 1999 through 2005. Therefore, the court only discusses damages through 2005 in this section, and addresses damages for later lease years in Section IV below.

5. Defendants' challenge to the admissibility of the calculations and values in exhibit E is without merit, and the court overrules Defendants' objection.

6. (Def.'s Mem. Opp'n [Doc. No. 709] 7); *See also Dawson v. Temps Plus, Inc.*, 337 Ark. 247, 987 S.W.2d 722, 728 (1999); *Taylor v. Colo. St. Bank of Denver*, 165 Colo. 576, 440 P.2d 772, 774 (1968); *Crawford & Assocs., Inc. v. Groves–Keen, Inc.*, 127 Ga.App. 646, 194 S.E.2d 499, 502 (1972); *Beard v. S/E Joint Venture*, 321 Md. 126, 581 A.2d 1275, 1278 (1990); *Situation Mgmt. Sys., Inc. v. Malouf, Inc.*, 430 Mass. 875, 724 N.E.2d 699, 704 (2000); *525 Main St. Corp. v. Eagle Roofing Co.*, 34 N.J. 251, 168 A.2d 33, 34 (1961);

outcome-determinative difference exists, and the court applies Minnesota law to the issue of contractual damages. *See Davis by Davis v. Outboard Marine Corp.* 415 N.W.2d 719, 723 (Minn.Ct.App.1987) (applying forum law absent actual conflict of laws).

Defendants first argue that the amount that Best Buy expected to pay for insurance is in dispute. In support. Defendants state that Best Buy required "100% assurance ... at a commercially reasonable rate" for claims related to the common areas of the shopping centers. (Defs.' Reply [Doc. No. 709] 6.) Accordingly, Defendants argue that Best Buy expected that it would pay for the first-dollar and captive-coverage programs in order to be fully insured. In response, Best Buy argues that it never expected to pay for these programs. Rather, Best Buy asserts that the integrated, final lease agreements represent the intent of the parties, and that the agreements do not cover payment for the first-dollar and captive-coverage programs.

■ In granting summary judgment, the court determined that the lease agreements unambiguously contemplated only commercial insurance. (*See, e.g.,* Order, 636 F.Supp.2d at 881, 882.) While the lease agreements allowed the landlord defendants to charge Best Buy for insurance, the lease agreements did not include the first-dollar or captive-coverage programs, and the court has determined that these programs are not insurance. (*See id.* at 880, 881–83, 883–84, 884–85.) Therefore, the lease agreements did not authorize the landlord defendants to charge Best Buy for the first-dollar and captive-coverage programs. Where a contract is unambiguous, the court will not consider extrinsic evidence of intent. *See Hous. & Redevelopment Auth. of Chisholm v. Norman,* 696 N.W.2d 329, 337 (Minn.2005). Therefore, based on the unambiguous language of the lease agreements, Defendants' argument fails.

■ Defendants next argue that they are entitled to mitigate the damages. "[T]he party breaching a contract is generally entitled to show, in mitigation or in reduction of the amount of damages, any facts surrounding the injury complained of, which tend to reduce the amount required for just compensation." *Ed S. Michelson, Inc. v. Neb. Tire & Rubber Co.,* 63 F.2d 597, 601 (8th Cir.1933). Defendants argue that compensating Best Buy for the cost of the first-dollar and captive-coverage programs provides a windfall to Best Buy because it received a benefit from these programs. Best Buy responds that the landlord defendants had no basis in the lease agreements to charge Best Buy for these programs and that Defendants have not demonstrated any benefit conferred.

■ Where, as here, a breaching party charges the non-breaching party for services not included in their contract, Minnesota courts do not consider a benefit conferred in determining damages. *See, e.g., Logan,* 603 N.W.2d at 663 (benefit received from improperly purchased insurance irrelevant to determination of damages). The court has already determined that the lease agreements did not allow Defendants to charge Best Buy for the first-dollar and captive-coverage programs, and therefore, the court does not consider

*Brushton–Moira Cent. Sch. Dist. v. Fred H. Thomas Assocs.,* 91 N.Y.2d 256, 669 N.Y.S.2d 520, 692 N.E.2d 551, 553 (1998); *State ex rel. Stacy v. Batavia Local Sch. Dist. Bd. of Educ.,* 105 Ohio St.3d 476, 829 N.E.2d 298, 305 (2005); *Action Ads, Inc. v. William B. Tanner Co., Inc.,* 592 S.W.2d 572, 575 (Tenn.Ct.App. 1979); *Little Darling Corp. v. Ald, Inc.,* 566 S.W.2d 347, 349 (Tex.App.1978); *cf. A.R.A. Mfg. Co. v. Pierce,* 86 Ariz. 136, 341 P.2d 928, 932 (1959).

the benefit conferred upon Best Buy by those programs when determining damages.

Moreover, even if the court were to consider the benefit to Best Buy under the first-dollar and captive-coverage programs, Defendants' argument still fails, because no evidence indicates that such a benefit existed. First, as property manager, DDRC bore the risk of loss in the common areas at all times. Moreover, even if Best Buy were found responsible for a loss in the common areas, it had no legally enforceable right to indemnity under the first-dollar and captive-coverage programs because they were not insurance under the relevant state laws, and Best Buy was not named as an additional insured. Therefore, Defendants are not entitled to offset the damages based on a benefit conferred upon Best Buy.

Defendants further argue that Best Buy has failed to prove the amount it paid for the first-dollar and captive-coverage programs. Rather, Defendants assert. Best Buy has only offered evidence of what Defendants charged. Defendants acknowledge, however, that "Best Buy paid the insurance [and first-dollar and captive-coverage program] charges in full for seven years without protesting." (Goodrich Aff. ¶ 25.) Based on this information, the court determines that the amount paid by Best Buy is not in dispute, and Defendants' argument fails.

Lastly, Defendants argue that Best Buy has not demonstrated that it was damaged. The court has already determined, however, that Defendants improperly charged Best Buy for the first-dollar and captive-coverage programs. Accordingly, based on the above discussion, the court finds that Best Buy is entitled to damages in the amount it paid for the first-dollar and cap-

tive-coverage programs in the amount of $495,145.97 for lease years 1999–2005.[7]

### III. Interest

█ Best Buy next argues that it Is entitled to interest on the judgment. Prejudgment interest is a matter of substantive law for purposes of *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). *Schwan's Sales*, 476 F.3d at 596–97; *see Trinity Prods., Inc. v. Burgess Steel, L.L.C.*, 486 F.3d 325, 335 (8th Cir.2007). Under Minnesota conflict-of-laws analysis, prejudgment interest is a matter of procedure, and therefore Minnesota applies the forum's law. *Schwan's Sales*, 476 F.3d at 597. Accordingly, the court applies Minnesota law to this dispute.

As to the lease agreements that do not provide for interest, Best Buy argues that Minnesota Statutes § 334.01 controls the award and rate of interest. Defendants argue that the prejudgment interest statute, Minnesota Statutes § 549.09, governs award and rate. Because the Minnesota Supreme Court has not decided whether § 334.01 or § 549.09 applies in a breach of contract action, the court must predict how it would resolve this issue. *See Marvin Lumber & Cedar Co. v. PPG Indus., Inc.*, 223 F.3d 873, 876 (8th Cir.2000).

Section 334.01 states, "[t]he interest for any legal indebtedness shall be at the rate of $6 upon $100 for a year, unless a different rate is contracted for in writing." Minn.Stat. § 334.01. Section 549.09, "Interest on verdicts, awards, and judgments," states "[e]xcept as otherwise provided by contract or allowed by law, preverdict, preaward, or prereport interest on pecuniary damages shall be computed ... from the time of the commencement of the action or a demand for arbitration, or the time of a

---

7. The statute of limitations bars recovery prior to April 11, 2000. *See* Minn.Stat. § 541.05. Some reconciliations for lease year 1999, however, were completed after April 11, 2000. Therefore, those charges are properly included as damages.

written notice of claim, whichever occurs first...." *Id.* § 549.09. Section 549.09 awards simple interest per annum, at a rate determined annually, to judgments of $50,000 or less, and 10% simple interest per annum to judgments greater than $50,000. *Id.* § 549.09(c).

Minnesota courts distinguish § 334.01 from § 549.09. Section 334.01 "applies to interest on 'legal indebtedness,' such as wages and tax refunds." *Nelson v. Ill. Farmers Ins. Co.*, 567 N.W.2d 538, 543 (Minn.Ct.App.1997); *accord Barton v. Moore*, 558 N.W.2d 746, 750 (Minn.1997) ("The law of usury is found in chapter 334 of Minnesota Statutes. Section 334.01, the general usury limit, was first enacted during territorial times and provides a standard rate of interest on all loans."). In contrast, the Minnesota Court of Appeals has determined that § 549.09 awards prejudgment interest "to compensate the plaintiff for the loss of use of money, deprive the defendant from making a gain as a result of using plaintiff's money, and promote settlement." *Nelson*, 567 N.W.2d at 543 (citations omitted). Accordingly, the Minnesota Court of Appeals applied § 549.09 to a breach of an insurance contract. *Id.* More recently, the Minnesota Court of Appeals determined that "Minnesota caselaw supports the sole utilization of Minnesota Statutes § 549.09 for all prejudgment interest other than loans and other obligations governed by specific interest-rate laws." *Richard Knutson, Inc. v. Lumber One, Avon, Inc.*, No. A04–76, 2004 WL 2093582, at *5 (Minn.Ct.App. Sept. 21, 2004).

The cases upon which Best Buy relies to show the Minnesota Supreme Court's application of § 334.01 to a breach of contract judgment are inapposite to the instant dispute. The court in *Specialized Tours, Inc. v. Hagen*, 392 N.W.2d 520, 540 (Minn.1986), awarded interest under Minnesota Statutes § 80A.23 for securities law violations, and referred to § 334.01 solely to supply an interest rate. *Id.* The court decided *Pearson–Berke, Inc. v. McIntosh*, 350 N.W.2d 378, 379 (Minn. 1984), before the 1984 amendments applying § 549.09 to unliquidated damages took effect. Indeed, Best Buy cites no case decided after the 1984 amendments took effect where the Minnesota Supreme Court or Court of Appeals applied § 334.01 to breach of contract damages.[8]

The court finds the reasoning of the Minnesota Court of Appeals in *Nelson* and *Richard Knutson* persuasive to predicting how the Minnesota Supreme Court would address the issue of whether § 334.01 applies to interest in this breach of contract action. The instant case presents a question of interest on a judgment, and the court predicts that the Minnesota Supreme Court would apply § 549.09.

Under § 549.09, "[e]xcept as otherwise provided by contract," Best Buy is entitled to interest from the date it filed a claim against each defendant. *See* Minn.Stat. § 549.09(b). Therefore, for the lease agreements that do not provide for interest, the court determines that Best Buy is entitled to prejudgment interest for its damages for lease years 1999–2005 under § 549.09[9] in the following amounts:

---

8. In a case predating *Nelson, Barton* and *Richard Knutson*, the Eighth Circuit held that § 549.09 was not intended to supersede § 334.01. *See Nw. Airlines, Inc. v. Flight Trails*, 3 F.3d 292, 297 (8th Cir.1993). The issue presently before the court, however, is not whether § 334.01 supersedes § 549.09, but rather which statute applies to the instant case.

9. The court calculates interest based on a 365–day year and rates of 4% for 2005, 2006, 2008, 2009 and 2010 and 5% for 2007, as determined by the Minnesota State Court Administrator. The court calculates interest for the Great Northern lease at a rate of 10% because the damages exceed $50,000.

| Lease Agreement | Date of Claim | Interest |
|---|---|---|
| Ahwatukee | Apr. 11, 2006 | $ 7,937.14 |
| Flatiron | Apr. 11, 2006 | $ 2,625.05 |
| JDN Douglasville | Apr. 11, 2006 | $ 4,284.65 |
| Turner Hill | Apr. 11, 2006 | $ 4,329.90 |
| Wrangleboro | Sept. 30, 2005 | $ 4,076.10 |
| Great Northern | Apr. 11, 2006 | $ 22,613.77 |
| JDN Overlook | Apr. 11, 2006 | $ 4,082.85 |
| Lakepointe | Apr. 11, 2006 | $ 4,182.96 |
| Total | | $ 54,132.42 |

The court next considers the lease agreements that provide for interest. *See id.* The leases for Spring Creek, Salisbury, Shoppers World, Riverdale, Nassau Park, Boulevard and Cool Springs each specify a rate of interest due on "payments required under this lease" from the date the payment was due. The court determines that the due date for each lease year is the date of the reconciliation. Therefore, Best Buy is entitled to interest from the date of yearly reconciliation calculated according to the lease agreements:

| Lease Agreement | Interest Rate |
|---|---|
| Spring Creek | First Bank Prime + 5% |
| Salisbury | 12% |
| Shoppers World | First Bank Prime + 5% |
| Riverdale | 12% |
| Nassau Park | Citibank Prime + 3% |
| Boulevard | 12% |
| Cool Springs | Citibank Prime + 3% |

(Mintzer Decl. Exs. 2 art. 16.3, 6 art. 49, 7 art. 16.3, 8 art. 16.3, 9 art. 47, 11 art. 38, 14 art. 47.) Accordingly, within 10 days, Best Buy shall submit an updated calculation of interest for lease years 1999–2005 in accordance with this order. Upon receipt, the court will enter an amended judgment.

## IV. Lease Years After 2005

Best Buy next argues that it is entitled to damages for lease years after 2005 under 28 U.S.C. § 2202. The Declaratory Judgment Act allows a court to grant further relief "after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment." 28 U.S.C. § 2202. Best Buy argues that it is entitled to discovery from Defendants regarding improper payments for the first-dollar and captive-coverage programs after 2005. Defendants argue that this action concerns only lease years 1999 through 2005 and that Best Buy has submitted no evidence indicating that the first-dollar and captive-coverage programs operated after 2005. Defendants, however, offer no evidence to suggest that the programs ended, and if they did, the discovery ordered below will reveal the appropriate facts.

In this case, the interests of efficiency counsel against requiring the parties to commence a new action to address the effect of this court's order on subsequent lease years. The parties have briefed and argued this issue, and the court finds that Defendants have had reasonable notice and hearing. Therefore, the court will allow additional discovery for the limited purpose of calculating Best Buy's damages for payments it made for the first-dollar and captive-coverage programs after 2005, consistent with this order and the July 14, 2009, order. To be clear, the court's allowance of additional discovery is neither an invitation to relitigate nor an opportunity to redefine this action.

Accordingly, within 30 days of this order, Defendants shall provide to Best Buy the information needed to calculate damages after 2005, including dates and amounts of payment for the first-dollar and captive-coverage programs. Within 10 days thereafter, the parties shall stipulate to the amount of damages and interest owing after 2005 or submit damages and interest calculations, consistent with this order, for the court's consideration.

## V. Declaratory Judgment

■ In its proposed order. Best Buy seeks a declaration that all new insurance purchased by Defendants must conform to "commercially reasonable terms,

costs and provisions." (Defs.' Mem. Opp'n 31; *accord* Reply ·30–31.) The parties have briefed and argued the issue. The court declines to issue a declaratory judgment when it "would engender more uncertainty and controversy than it would resolve." *Dominium Mgmt. Servs., Inc. v. Nationwide. Hous. Group,* 195 F.3d 358, 367 (8th Cir.1999). Best Buy's declaration is such a request. "Commercial reasonableness" of terms, costs and provisions is uncertain and undefined. For example. Best Buy's expert applied a "feel[s] like a retaliation" test to assess commercial reasonableness. Such an open-ended assessment will likely result in unnecessary further litigation between these parties. Moreover, the parties are free to negotiate changes to their lease agreements that reflect their shared understanding. Therefore, the court denies Best Buy's request.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

1. Best Buy's motion for voluntary dismissal [Doc. No. 695] is granted in part, and all remaining claims are dismissed with prejudice; and

2. Best Buy's motion for entry of judgment is granted in part:

A. As to lease years 1999 to 2005, judgment is entered for $495,145.97 in damages;

B. As to lease years 1999 to 2005, judgment is entered for $54,132.42 in prejudgment interest for the Ahwatukee, Flatiron, JDN Douglasville, Turner Hill, Wrangleboro, Great Northern, JDN Overlook and Lakepointe lease agreements;

C. As to the Spring Creek, Salisbury, Shoppers World, Riverdale, Nassau Park, Boulevard and Cool Springs lease agreements, within 10 days, Best Buy shall submit a revised calculation of interest in accordance with this order;

D. As to lease years after 2005, within 30 days, Defendants shall provide to Best Buy relevant information to calculate damages and interest; and

E. Within 40 days, the parties shall stipulate to the value of damages and interest for the lease years after 2005 or shall submit their determination of damages and interest, calculated in accordance with this order;

F. Best Buy's request for a declaration that future insurance shall be "commercially reasonable" is denied.