**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1846**

Arthur Allen Hogenson,
Respondent,

vs.

Michael W. Hogenson,
Appellant.

**Filed August 11, 2014
Affirmed in part, reversed in part, and remanded
Hudson, Judge**

Hennepin County District Court
File No. 27-CV-12-5530

Arthur Allen Hogenson, Oak Grove, Minnesota (pro se respondent)

Kelly Griffitts, Elizabeth Woolford Peterson, Griffitts Law Offices, PLLC, Bloomington, Minnesota (for appellant)

Considered and decided by Halbrooks, Presiding Judge; Hudson, Judge; and Smith, Judge.

**S Y L L A B U S**

The phrase "[e]xcept as otherwise . . . allowed by law" in Minn. Stat. § 549.09, subd. 1(b) (2012), requires that, when the common law permits recovery of preverdict interest on a claim, preverdict interest on any award be calculated according to common law principles. When preverdict interest is not available under common law, it should be calculated exclusively under Minn. Stat. § 549.09, subd. 1(b).

**O P I N I O N**

**HUDSON**, Judge

On appeal from an award of prejudgment interest to respondent, appellant argues that the district court erred by calculating preverdict interest at a rate of 10% under Minn. Stat. § 549.09 and by awarding postverdict-prejudgment interest on the sum of the jury award plus preverdict interest. In his related appeal, respondent argues that the district court abused its discretion by denying his motions to amend his complaint to request punitive damages and the establishment of a constructive trust. We affirm in part, reverse in part, and remand to the district court.

**FACTS**

In 1999, appellant Michael Hogenson and his brother, respondent Arthur Hogenson, owned and operated a waterproofing business called Standard Water Control Systems, Inc. (Standard).[1] The two also created a real estate investment company called Hogenson Properties, Ltd. At some point, the parties disagreed over the operation of the businesses and agreed that Michael would take sole ownership of Standard while Arthur would take sole ownership of Hogenson Properties. In 2001, Arthur and John Gieseke formed a competing waterproofing business, Diversified Water Diversion, Inc., as equal owners.

Arthur was incarcerated during 2007–08 after he pleaded guilty to felony tax evasion and felony possession of a controlled substance. While he was in prison, a

---

[1] Due to the extensive procedural and factual history of this case, we refer to the parties by their first names for clarity.

default judgment of $737,679.65 was entered against him after a former Diversified employee, Thomas Fallon, sued the company and Arthur individually for injuries sustained on the job. *See Fallon v. Hogenson*, No. A08-2142, 2009 WL 2498699, at *1 (Minn. App. Aug. 18, 2009). At some point, Michael purchased the judgment from Fallon for $62,600 and the judgment was assigned to MWH Properties, a company owned by Michael. Arthur moved to vacate the Fallon judgment, arguing that the district court lacked subject-matter jurisdiction because the Minnesota Worker's Compensation Act provided the sole remedy for Fallon to recover. That motion was denied, and the Hennepin County Sheriff served levies on Arthur's stock in Diversified and Hogenson Properties. The district court agreed to stay execution of the judgment while Arthur filed a motion to reconsider with the district court. That motion was denied. Arthur filed a second motion to vacate the default judgment, and the district court again stayed execution of the judgment; the second motion to vacate was also denied.

After Arthur filed an appeal to this court, a sheriff's sale of his stock in Diversified and Hogenson Properties was held. Two companies owned by Michael and his wife, IDCA and Asset Liquidators, purchased all of the stock. Then, while the appeal was still pending, Michael, acting now on behalf of Hogenson Properties, changed the business contact information, modified bank-account information, and redirected payments owed to the company. Michael also removed trucks, equipment, and other vehicles owned by Diversified from Arthur's property and changed the company's address with the Secretary of State. *See Gieseke ex rel. Diversified Water Diversion, Inc. v. IDCA, Inc.*, 844 N.W.2d 210, 213 (Minn. 2014). In addition, Michael removed two tractors and other

3

possessions from the property that belonged to Arthur personally. Michael's wife also conducted business as the vice president of Diversified, even though she had never been elected to the position. Gieseke, Arthur's business partner, who still owned 50% of Diversified, was not notified of her actions.

After Michael and his wife had taken these steps to control Diversified and Hogenson Properties, this court remanded the district court's order denying Arthur's motion to vacate the Fallon judgment for additional fact-finding. *See Fallon*, 2009 WL 2498699, at *4. On remand, the Fallon judgment was vacated for lack of subject-matter jurisdiction. Arthur then filed the suit at issue here against Michael and his wife individually, as well as their companies IDCA, Asset Liquidators, and MWH. At the time of summary judgment, the claims that remained included conversion of Arthur's shares in Diversified and Hogenson Properties, conversion of property on Arthur's homestead, and trespass onto the homestead. The summary judgment decision is not at issue in this appeal. Arthur's motion to amend his complaint to include a claim for punitive damages was denied, and a jury trial was held on the issue of damages only. The jury awarded Arthur $299,488 for conversion of his ownership interest in Hogenson Properties and $0 for conversion of his ownership interest in Diversified. The jury also awarded Arthur $5,000 for the conversion of two tractors, $100 for conversion of his furniture and household possessions, and $7,500 for trespass to his homestead. Arthur then moved the district court to amend his complaint to include a request to establish a constructive trust for any rights that Hogenson Properties might have to repayment of

4

funds previously advanced to Diversified by Hogenson Properties, when both companies were under Arthur's control. That motion was denied by the district court.

The parties submitted written arguments on the issue of prejudgment interest. The district court awarded Arthur preverdict interest at a rate of 10% on the conversion claims from the date of conversion to the date of the verdict under common law and Minn. Stat. § 549.09, subd. 1(b). On the trespass claim, the district court awarded Arthur preverdict interest at a rate of 10% from the date the claim was made to the verdict, solely under subdivision 1(b). The amount of the jury awards plus preverdict interest totaled $432,951.99. The district court also concluded that Arthur was entitled to prejudgment interest on the $432,951.99 from the date of the verdict to the date of entry of judgment at a rate of 10% under Minn. Stat. § 549.09, subd. 1(a). Michael appealed the district court's award of preverdict and postverdict-prejudgment interest. Arthur filed a related appeal arguing that the district court abused its discretion by denying his motions to amend his complaint for punitive damages and to establish a constructive trust.

**ISSUES**

I.    **Did the district court correctly award and calculate preverdict interest under Minn. Stat. § 549.09?**

II.    **Did the district court correctly calculate postverdict-prejudgment interest under Minn. Stat. § 549.09?**

III.    **Did the district court abuse its discretion by denying respondent's post-trial motion to amend his complaint to seek a constructive trust?**

IV.    **Did the district court abuse its discretion by denying respondent's motion to amend his complaint to seek punitive damages?**

## ANALYSIS

## I

An award of prejudgment interest under Minn. Stat. § 549.09 is reviewed de novo. *Duxbury v. Spex Feeds, Inc.*, 681 N.W.2d 380, 390 (Minn. App. 2004), *review denied* (Minn. Aug. 25, 2004). There are two subsets of prejudgment interest at issue here: preverdict and postverdict-prejudgment. Importantly, the parties do not dispute that postverdict-prejudgment interest is calculated solely under Minn. Stat. § 549.09, subd. 1(a). Rather, Michael disputes the calculation of preverdict interest on the conversion claims. He argues that because preverdict interest was allowed for conversion claims under common law, the district court should have applied a 6% preverdict interest rate under Minn. Stat. § 334.01, subd. 1 (2012), instead of the 10% interest rate under Minn. Stat. § 549.09. Michael also argues that, even if the district court correctly applied the 10% interest rate, it erred by accruing interest from the date of the conversions and by failing to apply the offer/counteroffer provision of section 549.09.[2]

*History of the Conflict Between Section 549.09 and Section 334.01*

In 1984 the Minnesota Legislature amended section 549.09, extending the availability of preverdict interest to most claims. *Trapp v. Hancuh*, 587 N.W.2d 61, 63 (Minn. App. 1998). The pertinent subdivision reads in part:

---

[2] Michael also argues that Arthur waived his right to preverdict interest on the conversion claims because he failed to argue preverdict interest to the jury. Instead, Arthur requested that the interest portion of the conversion jury instruction be removed and that the district court judge calculate interest. Michael did not object to Arthur's request at the time it was made, but rather waited until after the verdict when the argument could not be meaningfully addressed by the district court. Thus, we decline to address the argument on appeal. *See Thiele v. Stitch*, 425 N.W.2d 580, 582 (Minn. 1988).

6

> Except as otherwise provided by contract or allowed by law, preverdict, preaward, or prereport interest on pecuniary damages shall be computed as provided in paragraph (c) from the time of the commencement of the action or a demand for arbitration, or the time of a written notice of claim, whichever occurs first, except as provided herein. The action must be commenced within two years of a written notice of claim for interest to begin to accrue from the time of the notice of claim.

Minn. Stat. § 549.09, subd. 1(b). The center of this dispute rests in the interpretation of the phrase "[e]xcept as otherwise . . . allowed by law." *Id.*

Under common law, preverdict interest began to accrue at the 6% rate prescribed by section 334.01 from the date a claim arose and was only applied "when the amount demanded [could] be ascertained by computation or reference to generally recognized standards and [did] not depend on a contingency." *Trapp*, 587 N.W.2d at 64. Under section 549.09, prejudgment interest begins to accrue when an action is commenced or when a written notice of the claim is made, whichever occurs first. Minn. Stat. § 549.09, subd. 1(b). Interest accrues at a rate of 10% for awards over $50,000 and at a rate "based on the secondary market yield of one year United States Treasury bills" for lesser awards. *Id.*, subd. 1(c)(2), (1). In addition, there is no requirement under section 549.09 "that the damages be readily ascertainable." *Schwickert, Inc. v. Winnebago Seniors, Ltd.*, 680 N.W.2d 79, 88 (Minn. 2004).

Arthur argues that, because interest on conversion claims began to accrue under common law on the date the conversion occurred, the phrase "as otherwise . . . allowed by law" overrides the accrual start date found in subdivision 1(b) and allows the calculation to begin at the time of conversion. Nonetheless, Arthur still argues, and the

7

district court concluded, that the 10% rate specified in section 549.09 should apply, rather than the 6% rate under section 334.01. Michael argues that section 549.09 only applies to claims that did not allow for preverdict interest at common law; thus, Arthur is limited to the 6% rate under section 334.01.

Since section 549.09 was amended in 1984, courts applying Minnesota law have issued inconsistent decisions on how section 549.09 interacts with the existing common law on preverdict interest and with section 334.01. The first case addressing the new amendments was *L.P. Medical Specialists, Ltd. v. St. Louis Cty.*, 379 N.W.2d 104 (Minn. App. 1985), *review denied* (Minn. Jan. 31, 1986). There, this court concluded that 6% interest under section 334.01 should be awarded from the date the payment was demanded until the date that amended section 549.09 went into effect, but that thereafter the prevailing party was entitled to interest calculated under section 549.09. *Id.* at 109–10. Two conflicting positions have arisen out of this court since then. In *Seaway Port Auth. of Duluth v. Midland Ins. Co.*, 430 N.W.2d 242, 252 (Minn. App. 1988), this court stated that "[t]he prejudgment interest statute [section 549.09] was not intended to disturb the existing law of prejudgment interest, but to provide for prejudgment interest in situations where prejudgment interest was not already allowed by law." In that case, this court concluded that the district court had not erred by calculating prejudgment interest according to common law principles rather than under section 549.09. *Id.*; *see also Northwest Airlines, Inc. v. Flight Trails*, 3 F.3d 292, 297 (8th Cir. 1993) (citing *Seaway* and stating that section 549.09 "was not intended to disturb" existing law on prejudgment interest). Similarly, in *Trapp*, 587 N.W.2d at 64, this court concluded that

8

"[p]rejudgment interest [under existing common law] from the time the claim arises is appropriate when the amount demanded can by ascertained by computation or reference to generally recognized standards and does not depend on a contingency."

In contrast, *Nelson v. Ill. Farmers Ins. Co.*, 567 N.W.2d 538, 543 (Minn. App. 1997), *review denied* (Minn. Oct. 21, 1997), concluded that section 334.01 only remains applicable to a very narrow section of claims, such as wages and tax refunds, while section 549.09 should apply to all other litigants. *See also Best Buy Stores, L.P. v. Developers Diversified Realty Corp.*, 715 F. Supp. 2d 871, 878 (D. Minn. 2010) (concluding that section 334.01 only applies to "obligations governed by specific interest-rate laws") (quotation omitted). The Minnesota Supreme Court has never discussed the interplay between section 334.01 and section 549.09. *See id.* at 877 (noting that the supreme court has never determined whether section 334.01 or section 549.09 would apply in a breach-of-contract case).

Ultimately, we are persuaded by *Trapp* and *Seaway* that section 549.09 was meant to supplement, not replace, the existing law on preverdict interest. Nothing in the plain language of section 334.01 would lead us to conclude that it applies only to very specific types of claims, as suggested by this court in *Nelson*. Therefore, we conclude that the phrase "[e]xcept as otherwise . . . allowed by law" requires that preverdict interest be calculated under existing common-law principles whenever possible. Because preverdict interest was allowed for conversion claims under common law, preverdict interest should be calculated from the date of conversion at 6% under section 334.01 to the date of the verdict *if* the damages are ascertainable or liquidated. *See Trapp*, 587 N.W.2d at 64;

9

*Dairy Farm Leasing Co. v. Haas Livestock Selling Agency, Inc.*, 458 N.W.2d 417, 419 (Minn. App. 1990). When damages are not readily ascertainable, or when a claim did not allow for preverdict interest prior to the 1984 amendment, preverdict interest should be calculated exclusively under section 549.09, subd. 1(b), "from the time of the commencement of the action or a demand for arbitration, or the time of a written notice of claim, whichever occurs first." *See Trapp*, 587 N.W.2d at 64. All other prejudgment interest, including from the date of the verdict to the date of judgment, and from the date of judgment to the date of actual payment, should be calculated under the appropriate subdivision of section 549.09 in every case. *See* Minn. Stat. § 549.09, subd. 1(a) (providing for postverdict prejudgment interest), subd. 2 (providing for interest from the date of judgment to the date of payment).

*Arthur's Conversion Claims*

Applying the analysis above, preverdict interest on Arthur's conversion claims should be calculated at 6% under section 334.01 from the date of conversion to the date of the verdict, provided that those conversion claims were readily ascertainable or liquidated. We conclude, however, that they were not. "Traditionally, pre-verdict interest was not allowed on an unliquidated claim . . . where the amount of damages depended upon contingencies or jury discretion." *Lienhard v. State*, 431 N.W.2d 861, 865 (Minn. 1988). Further, if the value of a claim "ha[s] to be determined by litigation, it [is] neither liquidated nor readily ascertainable." *Trapp*, 587 N.W.2d at 64.

In this case, the purpose of the trial was to determine the amount of damages Arthur incurred as a result of the conversion of his stock and property; thus the damages

10

were not liquidated nor readily ascertainable. Accordingly, we reverse the district court's award of preverdict interest from the date the three conversion claims arose and remand for the district court to calculate preverdict interest under section 549.09, subdivision 1(b), exclusively. *See id.* Because interest calculations begin to accrue under subdivision 1(b) "from the time of the commencement of the action or a demand for arbitration, or the time of a written notice of claim, whichever occurs first," we also remand for the district court to determine the date of written notice for each of the conversion claims.

*Arthur's Trespass Claim*

The district court calculated preverdict interest on the trespass claim solely under section 549.09, subdivision 1(b), and the parties do not dispute that decision. Rather, Michael argues that the district court applied the wrong accrual date. The district court awarded interest from November 4, 2010. On that date, Arthur filed a similar complaint in a separate case that was ultimately dismissed without prejudice. It is not clear whether the earlier complaint was part of the district court record in this case. If not, preverdict interest should have been calculated from the date the complaint was filed in this case— December 30, 2011. Accordingly, while we conclude that the district court properly calculated preverdict interest on this claim under subdivision 1(b), we reverse the award and remand for the district court to determine the proper date of written notice.

*Offer/Counteroffer Provision*

Michael next argues that the district court erred by not applying the offer/counteroffer provision of section 549.09, subdivision 1(b). Because this argument was presented to the district court, but the district court did not issue a ruling on it, we

11

assume the argument was implicitly rejected when the district court granted Arthur's motion for preverdict interest. *See Alliance for Metro. Stability v. Metro. Council*, 671 N.W.2d 905, 919 (Minn. App. 2003) (stating that a district court implicitly denied a motion to continue discovery when it granted the opposing party's motion for summary judgment).

A prevailing party shall receive preverdict interest

> only if the amount of its offer is closer to the judgment or award than the amount of the opposing party's offer. If the amount of the losing party's offer was closer to the judgment or award than the prevailing party's offer, the prevailing party shall receive interest only on the amount of the settlement offer or the judgment or award, whichever is less, and only from the time of commencement of the action or a demand for arbitration, or the time of a written notice of claim, or as to special damages from when the special damages were incurred, if later, until the time the settlement offer was made. Subsequent offers and counteroffers supersede the legal effect of earlier offers and counteroffers. For the purposes of clause (2), the amount of settlement offer must be allocated between past and future damages in the same proportion as determined by the trier of fact.

Minn. Stat. § 549.09, subd. 1(b). The offer/counteroffer provision applies to all parties seeking preverdict interest (whether their claim allowed for interest at common law or not) because that provision is not qualified with the phrase "as otherwise . . . allowed by law." *See id.* "Valid offers and counteroffers under section 549.09 must be in writing and must offer, in sufficiently clear and definite terms, to dispose completely the claims between the negotiating parties." *Hodder v. Goodyear Tire & Rubber Co.*, 426 N.W.2d 826, 840 (Minn. 1988).

12

Michael claims that he first offered to settle the case in November 2010 when he returned Arthur's property, including the real estate holdings of Hogenson Properties. Michael argues that this offer was closer in value to the jury award of $299,498 than the $600,000 amount Arthur claimed in damages. But in his brief to this court, Michael claims that he made a later settlement offer to Arthur, which would "supersede the legal effect" of the original offer under Minn. Stat. § 549.09, subd. 1(b). Specifically, Michael claims that he made a second offer to settle for $375,000 and that Arthur counteroffered for $425,000. The evidence of this offer and counteroffer is contained in two e-mails between the parties' attorneys.

Arthur contends that e-mails do not qualify as writings. We reject this contention, but conclude that the e-mails in this case do not meet the requirements for a valid offer and counteroffer under section 549.09. The e-mails are summaries of negotiations that had taken place during mediation of these disputes and reflect that the parties contemplated additional provisions to be included in any settlement provisions that were not ultimately agreed upon between the parties. Finally, the figures proposed only resolved the issue of damages for the conversion of the Hogenson Properties stock; the other conversion claims and the trespass claim were not mentioned. Accordingly, the district court did not err by implicitly rejecting Michael's argument that the offer/counteroffer provision should apply.

## II

Michael next argues that the district court should have awarded Arthur postverdict-prejudgment interest only on the damages the jury awarded, instead of

13

awarding postverdict-prejudgment interest on the sum of the jury damages plus preverdict interest. Michael does not cite any legal authority to support this argument. Postverdict-prejudgment interest is awarded under Minn. Stat. § 549.09, subd. 1(a): "[w]hen a judgment or award is for the recovery of money . . . interest from the time of the verdict, award, or report until judgment is finally entered shall be computed . . . and added to the judgment or award." Preverdict interest is "an element of damages awarded to provide full compensation by converting time-of-demand . . . damages into time-of-verdict damages." *Lienhard*, 431 N.W.2d at 865; *see also Myers v. Hearth Technologies, Inc.*, 621 N.W.2d 787, 794 (Minn. App. 2001), *review denied* (Minn. Mar. 13, 2001) (citing *Lienhard* for the proposition that preverdict interest is an additional element of compensatory damages).

Because preverdict interest is part of compensatory damages, it is part of a prevailing party's judgment or award. Accordingly, the district court did not err by including the preverdict interest in the total sum of the award upon which postverdict-prejudgment interest should be calculated.

### III

Arthur argues in his related appeal that the district court abused its discretion by denying his postverdict motion to amend his complaint to seek a constructive trust and for summary judgment establishing that trust. When issues not contained in the original pleadings are actually tried with the express or implied consent of both parties, "they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the

14

evidence and to raise these issues may be made upon motion of any party at any time." Minn. R. Civ. P. 15.02. A district court's denial of a motion to amend a complaint will not be reversed absent a clear abuse of discretion. *LaFee v. Winona Cty.*, 655 N.W.2d 662, 668 (Minn. App. 2003), *review denied* (Minn. Mar. 27, 2003). A party seeking to establish a constructive trust must show "by clear and convincing evidence that the imposition of a constructive trust is justified to prevent unjust enrichment." *In re Estate of Eriksen*, 337 N.W.2d 671, 674 (Minn. 1983).

The district court concluded that Arthur's request for a constructive trust was inconsistent with the manner in which the case was pleaded and tried. We agree. The district court noted that Arthur prevailed on the "theory that [Michael] permanently converted his stock in Hogenson Properties," and then claimed that "he is entitled to a constructive trust over the $20,000 debt owed by Diversified to Hogenson Properties." In particular, Arthur argued to the jury that the debt owed by Diversified to Hogenson Properties was bad debt that should be used to offset Hogenson Properties' tax liability, thereby potentially increasing his award of damages for conversion of his stock in Hogenson Properties. By seeking to establish the constructive trust, Arthur was essentially taking the opposite stance by claiming that the debt had value. Accordingly, we conclude that the district court did not abuse its discretion by denying Arthur's motion.

## IV

Arthur also argues in his related appeal that the district court abused its discretion by denying his motion to amend his complaint to seek punitive damages. Under Minn.

Stat. § 549.191 (2012), a party may move the district court seeking permission to amend its pleadings to request punitive damages after a case has commenced. The party must state the legal basis for punitive damages and provide one or more affidavits containing a factual basis for the claim. *Id.* The relevant statute provides:

> (a) Punitive damages shall be allowed in civil actions only upon clear and convincing evidence that the acts of the defendant show deliberate disregard for the rights or safety of others.
> (b) A defendant has acted with deliberate disregard for the rights or safety of others if the defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the rights or safety of others and:
> (1) deliberately proceeds to act in conscious or intentional disregard of the high degree of probability of injury to the rights or safety of others; or
> (2) deliberately proceeds to act with indifference to the high probability of injury to the rights or safety of others.

Minn. Stat. § 549.20 (2012):

"[I]f the court finds prima facie evidence in support of the motion, the court shall grant the moving party permission to amend the pleadings to claim punitive damages." Minn. Stat. § 549.121. The plaintiff's burden is to produce evidence, which, if unrebutted, would show that the defendant acted with "willful indifference" by clear and convincing evidence. *Swanlund v. Shimano Indus. Corp. Ltd.*, 459 N.W.2d 151, 154 (Minn. App. 1990) (quotation omitted), *review denied* (Minn. Oct. 5, 1990). The district court's decision to deny a motion to add a claim for punitive damages is reviewed for an abuse of discretion. *Bjerke v. Johnson*, 727 N.W.2d 183, 196 (Minn. App. 2007), *aff'd*, 742 N.W.2d 660 (Minn. 2007).

16

At the district court, Arthur argued that he should be permitted to seek punitive damages because the brothers have a history of conflict and Michael's actions of trespassing and converting property while the Fallon judgment appeal was still pending in this court showed malice and a deliberate disregard for Arthur's rights. The district court concluded that Arthur had not met his burden to establish a prima facie case because the evidence of Michael's actions did not "rise to the level of conscious or intentional disregard contemplated by the punitive damages statute." The district court noted that Michael's conversion and trespassing took place after receiving the advice of his lawyer and, although the appeal was still pending, after three district court orders denied Arthur's motions to vacate the Fallon judgment. We see no abuse of discretion in the district court's conclusion that Arthur's allegations did not establish a prima facie case for punitive damages.

## DECISION

We reverse the portion of the district court's order awarding preverdict interest from the date of conversion and remand for the district court to recalculate the interest consistent with this opinion. We affirm the award of postverdict-prejudgment interest on the sum of the jury verdict plus the preverdict interest. As to Arthur's related appeal, we affirm the district court's order denying Arthur's motions to amend his complaint to request punitive damages and to request the establishment of a constructive trust.

**Affirmed in part, reversed in part, and remanded.**

17